Martha PERRY, Movant,

v.

William T. WILLIAMSON and Doris J. Williamson, Respondents.

No. 90–SC–773–DG.

Supreme Court of Kentucky.

Feb. 13, 1992.

Norman E. McNally, Edward F. Rectenwald, Louisville, for movant.

Chester A. Vittitow, Louisville, for respondents.

LEIBSON, Justice.

The sole issue in this case is whether the trial court properly instructed the jury on the duties owed by the respondents, William and Doris Williamson, as persons in possession of residential real estate, to the movant, Martha Perry, who had come to the premises as one of several Jehovah's Witnesses to follow up on an inquiry from a daughter in the household regarding their literature. Movant was standing on the front porch at the door of the respondents' house when she was struck by a falling limb from a dead tree in the front yard. At this point there is no dispute as to her status in using the premises being that of a licensee.

The case was submitted to the jury under instructions which the respondents claim, and successfully argued at the Court of Appeals level, were inappropriate to describe the duties of the landowners in the circumstances. These instructions were taken almost verbatim from the sample instruction in Palmore's *Kentucky Instructions to Juries,* 2d Ed.1989, Sec. 24.09, Instruction No. 2. The only differences between Palmore's instruction and the instruction given at the trial of this case were factual references necessary to accommodate the facts of this case.

The respondents insist that while the instruction on liability given at the trial might have been suitable had the movant enjoyed the status of an invitee, it lacked necessary elements which must be proved to merit recovery by a licensee. The instruction set out in Palmore's Sec. 24.09 is explicitly stated in the "Comment" as an appropriate example where there is "a jury question as to the status of the injured party" as an invitee or a licensee. The instruction in its entirety leaves no doubt that Instruction No. 1 in the sample instruction sets out the defendant's duties if the jury finds the plaintiff is an invitee, and Instruction No. 2 then applies if the jury is "not satisfied from the evidence" that plaintiff was an invitee as defined by circumstances set out in Instruction No. 1. Respondents' counsel insists that Instruction No. 2 as well as Instruction No. 1 describes liability only where the plaintiff is an invitee, but plainly that is *not* the intent of the author.

Respondents' counsel has badly misunderstood Palmore's Sec. 24.09 and the "Comment" which explains the underlying legal principles illustrated through the instructions. Nevertheless, the basic question is not whether the trial court has followed the sample instruction set out in Palmore, which it has, but whether the instructions given properly apply the law of the State of Kentucky. The Court of Appeals has held that the instructions given were erroneous, and reversed and remanded for a new trial. With all due deference to the scholarly quality of Palmore's

Instructions, we recognize the issue is whether the trial court's instructions are correct, not whether the trial court has followed Palmore. For reasons that we will discuss, we have concluded that both the trial court *and* Palmore have correctly applied the law in this case. Accordingly, we reverse the Court of Appeals and reinstate the judgment entered in the trial court.

Before addressing the instructions, for a clearer understanding of where we are in this case we need to refer first to other issues which are no longer part of this case.

There is no cross-motion for discretionary review in this case. Thus there were certain questions presented to the Court of Appeals which are no longer at issue. These are:

1) Were the respondents entitled to a directed verdict? The Court of Appeals held there was sufficient evidence to establish both movant's status as a licensee rather than as a trespasser and liability to a licensee in the circumstances.

2) Did the trial court err in failing to include a comparative negligence instruction? The Court of Appeals held, citing *Gravatt v. B.F. Saul Real Estate Investment Trust,* Ky., 601 S.W.2d 287 (1980), that "in a case like this," where liability is premised on "[t]he duty owed by the possessor ... to warn of hazards which are not obvious," comparative negligence is not an issue, because "if the hazard is obvious, than the possessor cannot be liable in the first place."

3) Did the trial court err in admitting evidence and instructing upon medical expenses for a post-accident condition for which the proof was insufficient to connect it to the occurrence? The Court of Appeals held that since it was "reversing this matter on other grounds [error in the instructions], we need not reach this issue."

As stated above, the first two of these issues were rejected by the Court of Appeals, and the third was mentioned but not "addressed." Our rules are specific that if the motion for discretionary review made by the losing party in the Court of Appeals is granted, it is then incumbent upon the prevailing party in the Court of Appeals to file a cross-motion for discretionary review if respondent wishes to preserve the right to argue issues which respondent lost in the Court of Appeals, or issues the Court of Appeals decided not to address. If the party prevailing in the Court of Appeals wishes further consideration of such issues along with the issues for which discretionary review has been granted, the prevailing party *must* file a cross motion for discretionary review. CR 76.21; *Green River Dist. Health Dept. v. Wigginton,* Ky., 764 S.W.2d 475 (1989); *Comm. Transportation Cabinet Dept. of Highways v. Taub,* Ky., 766 S.W.2d 49 (1988).

Now we turn to the issue before us: were the instructions erroneous? The reasons stated in the Court of Appeals' Opinion for so holding are three:

1) "[L]iability was premised upon knowledge of the deteriorated condition of the tree alone, although an additional requirement is that the appellant should have realized that the condition of the tree involved an unreasonable risk of harm to the appellee."

2) "Further, the instructions did not require a finding that the appellants had reason to believe that the appellee would not discover the condition of the tree or appreciate the risk of harm."

3) "[T]he trial court's instruction in subsection [c] speaks not only of actual knowledge of the condition of the tree, but also knowledge brought to the attention of the appellants 'by information from which in the exercise of ordinary care they should have known it.' "

Because the instruction was an attempt to paraphrase Palmore, we start our discussion with a comparison between the two. Palmore's instruction in Sec. 24.09, in its entirety, is an instruction drawn up to cover the situation where there is an issue "whether [the] injured party was an invitee or licensee." No. 1 then states both what the jury must believe to find the plaintiff was an invitee and what the jury must

believe to find liability in the event the plaintiff is found to be an invitee. No. 2 then starts with a prefatory phrase that the jury will apply it if the jury is "not satisfied from the evidence that P's [plaintiff's] purpose in going into the room" was such that plaintiff was an invitee under No. 1. No. 2 then proceeds with what the jury must find to find liability against the defendant if the plaintiff is *not* an invitee but a licensee. It is helpful to a full understanding of this case to set out Palmore's No. 2 side by side with the trial court's jury instruction given in this case. When we do so it is clear that the trial court succeeded in its effort to paraphrase Palmore's instructions, so the issue then becomes only whether Palmore's sample instruction was wrong.

| PALMORE'S INSTRUCTIONS 1989 | TRIAL COURT'S INSTRUCTIONS |
|---|---|
| 2. ...you will find for P only if you are satified from the evidence as follows: | You will find for Plaintiff, Martha Perry, if you are satisfied from the evidence as follows: |
| (a) that P was in the room with D's permission, either express or implied; | (a) that Plaintiff was upon the premises with Defendants' permission, either express or implied; |
| (b) that by reason of the hole covered over with sheetrock the floor in the room was not in a reasonably safe condition for use by P; | (b) that by reason of the deteriorated condition of the tree mentioned in the evidence the premises were not in a reasonably safe condition for use by Plaintiff; |
| (c) that D had actual knowledge of such condition [or it had been brought to his attention by information from which in the exercise of ordinary care he should have known it]; | (c) that Defendants had actual knowledge of such condition (or it had been brought to their attention by information from which in the exercise of ordinary care they should have know it); |
| (d) that D had such knowledge or information in sufficient time to prevent the accident; | (d) that Defendants had such knowledge or information in sufficient time to prevent the accident; |
| (e) that in the exercise of ordinary care D should have anticipated that P might step on the sheetrock covering the hole in the floor unless forewarned of the danger; AND | (e) that in the exercise of ordinary care Defendants should have anticipated that Plaintiff might step upon the mentioned premises, unless forewarned of the danger; AND |
| (f) that the absence of such a forewarning to P was a substantial factor in causing the accident. | (f) that the absence of such a forewarning to Plaintiff was a substantial factor in causing the accident. |

In both the sample instruction in Palmore and the present case the person injured has come upon the property with the implied permission of the person in possession. As stated in the Court of Appeals' Opinion, "there exists an implied invitation for one to come up to the house of another for information, visitation, or the like. *See City of Mt. Sterling v. Donaldson Baking Co.*, 287 Ky. 781, 155 S.W.2d 237 (1941); *see also* 75 Am.Jur.2d *Trespass* § 41 (1974)." Such a person is a licensee just the same as the hypothetical plaintiff in Palmore's sample instruction, Sec. 24.09, No. 2 who was not a business invitee because there was no mutual business purpose. Both Palmore's example and the present case are premised on a situation where there is evidence from which the jury could find a latent or unobservable

condition, which the defendant knows of and should know is unreasonably unsafe if a licensee comes upon the premises. In Palmore's example it is a "hole covered over with sheetrock," and in the instruction given in the present case it is "the deteriorated condition of the tree mentioned."

Subpart (b) of the instruction, both in Palmore's example and the case now under consideration, requires a finding by the jury before liability attaches (1) that the condition exists and (2) that it is unreasonably unsafe. If such condition exists and is known to the person in possession, it is his duty to a licensee to forewarn of the danger if he has not corrected it. As Palmore explains:

> "Sometimes the duties toward a licensee are stated in terms of an alternative—that is, if a condition known to or brought to the attention of the possessor presents an unreasonable risk of harm to the licensee the duty of the possessor is (a) to correct it or (b) to warn against it. [Citations omitted.] Basically, however, the possessor has no duty to provide safe premises for a licensee. Making the premises safe is merely an option on his part as a means to obviate what otherwise is ... the duty to warn."

Apparently the Court of Appeals believed it was error not to impose "an additional requirement ... that the appellants [land occupiers] should have realized that the condition of the tree involved an unreasonable risk of harm to the appellee." As stated in *Gravatt v. B.F. Saul Real Estate Investment Trust*, Ky., 601 S.W.2d 287 (1980), authored by Chief Justice Palmore, (who of course, also authored the example instruction criticized by the Court of Appeals):

> "The reason for publication of this opinion is to dispel a misconception with respect to whether a possessor's exposure to liability rests upon knowledge of a particular *condition* or upon his further knowledge or realization that the condition is *dangerous*.
>
> ....
>
> To make a long story short, if the possessor of premises has knowledge of a condition that a properly-instructed jury finds unreasonably hazardous to a licensee exercising ordinary care for his own safety, then it does not make any difference whether the possessor had actual cognizance of the danger. It is enough that he was aware of the condition itself. The law holds him to that which an ordinarily prudent person with the same knowledge would have anticipated." *Id.* at 289.

█ The key to the land occupier's liability to the licensee lies in knowledge of a condition which a reasonably prudent person would realize is dangerous to an unsuspecting licensee, should one come upon the premises. It is not necessary that the land occupier *admit* that he knew the condition was unsafe because if he knows of the condition and it is unsafe, the law requires him to know it is unsafe. As stated in *Gravatt, supra,* "it does not add anything" to use the adjective "unsafe" in the instruction which requires a finding the defendant knew of the condition or had "information from which in the exercise of ordinary care he should have known it." *Id.* The reason this is so, as stated in the *Gravatt* Opinion is because:

> "It is the duty of the possessor to foresee that a condition known to himself presents an unreasonable risk of danger to an expected user of the premises exercising ordinary care for his own safety." *Id.* at 289.

The Court of Appeals mistakenly believed that an earlier case from our Court, which was not overruled in *Gravatt, Kentucky & West Virginia Power Co. v. Stacy*, 291 Ky. 325, 164 S.W.2d 537 (1942), called for a different result. The *Kentucky & West Virginia Power Co.* case involved injury to a licensee from a gas explosion that occurred during his use of the premises. The instruction was in error because it "imposed on the defendant the duty of discovering the presence of the gas [the condition]." But the instruction in the present case did not impose upon the defendant the duty of discovering the presence of the tree; on the contrary, it did not impose liability unless the jury found that

(1) the tree was in a "deteriorated condition" that (2) made the premises unreasonably unsafe ("not in a reasonably safe condition"), and (3) the defendant "had actual knowledge of such condition" or "information from which in the exercise of ordinary care" the defendants "should have known of the condition."

Next, the Court of Appeals' Opinion points out, presumably as error that "the instructions did not require a finding that the appellants had reason to believe that the appellee would not discover the condition of the tree or appreciate the risk of harm."

The Court of Appeals' Opinion answers its own criticism in this respect elsewhere while discussing the contributory negligence aspect of the case:

"As pointed out in *Gravatt*, a finding by a jury in a case like this that the possessor of the land is liable excludes a finding of contributory negligence on the theory that the condition and danger should have been obvious to the licensee. The duty owed by the possessor is to warn of hazards which are not obvious, *see Shipp v. Johnson*, Ky., 452 S.W.2d 828 (1970), and if the hazard is obvious, then the possessor cannot be held liable in the first place."

"If the hazard is obvious" then it does not involve an unreasonable risk of harm to the licensee. A separate instruction to this effect adds no additional element to what the jury must find to impose liability.

Both the parties have referred to the *Restatement (Second) of Torts*, Sec. 342, as appropriately describing when the possessor of land is subject to liability for dangerous conditions which he knows of and should realize involve an unreasonable risk of harm to licensees. As stated in Comment e:

"The liability of a possessor of land who invites or permits licensees to enter his land is not based upon a duty to maintain it in safe condition. It is based upon his duty to disclose to them the risk which they will encounter if they accept his invitation or permission. He is required to exercise reasonable care either *to make the land as safe as it appears, or to disclose the fact that it is as dangerous as he knows it to be.* Therefore *it is immaterial that a dangerous condition* known to him, and which he has reason to believe that the licensees will not discover, is *natural rather than artificial.*" [Emphasis added.]

Thus the difference between the artificial condition in Palmore's sample instruction, Sec. 24.09, and the natural condition as constituted by the deteriorated tree is "immaterial." The movant's evidence was that the respondents knew the tree was dead, knew it did not leaf out the year before, knew that limbs had been falling off for some time, and knew that the tree needed to be cut down; that such information had been brought to their attention by a person in the business. In such circumstances the comment in the *Restatement* that the possessor of land "is required to exercise reasonable care either to make the land as safe as it appears, or to disclose the fact that it is as dangerous as he knows it to be," is appropriate.

The third fallacy in the Court of Appeals' Opinion is its statement that subsection (c) of the trial court's instructions was confusing or "could be construed to impose a duty on the appellants to exercise ordinary care to investigate for and discover dangerous conditions on their land." On the contrary, subsection (c) did no more than explain that actual knowledge includes knowledge "brought to their attention by information from which [the respondents] ... should have known" of the condition. As otherwise explained in Palmore's "Comment" to Sec. 24.09:

"It will be noted that the bracketed portion of Instruction 2(c) in this example permits the jury to infer actual knowledge on the part of D from evidence that he had sufficient information from which in the exercise of ordinary care he *should* have known. Sec. 342 and other related sections of the Restatement, Tort 2d, use the expression 'reason to know,' or 'reason to realize,' which are defined in Restatement, Torts, 2d, Sec. 12. The

form chosen for the various examples in this work involving that principle seeks to express it in such a way as to avoid the necessity of a separate definition. It is important to observe the difference between this concept (notice or knowledge) and the duty to inspect."

■ A great deal of the confusion in this case, as exhibited in the briefs filed in this Court and in the oral argument, flows from trying to reason from off-the-rack labels: "trespasser," "licensee" or "invitee," rather than from basic negligence principles. The labels, "trespasser," "licensee" or "invitee," are not in themselves answers to what reasonable care requires in the circumstances. "The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent." *Gas Services Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985); *see also Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328, 332 (1987). The injured party's status as trespasser, licensee, or invitee, is an important factor in determining whether the possessor of land has exercised reasonable care, but such status is by no means the end of the inquiry. An enlightened legal system does not reason backward from labels, to decide whether a duty of reasonable care exits. It reasons forward from circumstances, using foreseeability, the gravity of the potential harm, and the possessor's right to control his property, to decide what is reasonable conduct in the circumstances and what is negligence. Prosser & Keaton, *Law of Torts*, Sec. 53 (5th ed. 1984), discusses "the 'artificial condition' of reasoning from the premise of 'no duty' in disregard of negligence principles." Thus we recognize that the only difference between the duty which would have been owed to Ms. Perry had she been a business invitee, and the duty which was in fact owed to her under the circumstances of this case in her status as a gratuitous licensee, is that the respondents were under no duty of reasonable care to discover the existence on their premises of a dangerous condition, as would be the case with a business invitee. This difference was covered adequately by

subsection (c), which required before imposing liability that the jury be satisfied from the evidence that respondents had "actual knowledge" of the condition "or [had] information from which in the exercise of ordinary care they should have known it."

■ The duty owed by the person in possession of land to others whose presence might reasonably be anticipated, is the duty to exercise reasonable care in the circumstances. The traditional classifications, "trespasser," "licensee" and "invitee," are simply convenient classifications for defining certain basic assumptions appropriate to the duty of the party in possession in the circumstances. These classifications help to define the real issue, which is what is reasonable care under the circumstances?

The most recent definitive text on tort law is Harper, James and Gray, *The Law of Torts*, 2d ed, Vol. 5, Secs. 27.8–11 (1986). Our Opinion here is consonant with the text of this treatise. We quote from Sec. 27.9:

"In judging these matters, all the circumstances must be considered.... As a general rule, more precautions are apt to be required where premises have been arranged for the entry of more or less identified segments of the public,...." *Id.* at 206–07.

    ....

In the case of licensees, however, most courts today extend the occupier's duty to any danger (from a condition known to the person in possession) that the licensee cannot reasonably be expected to observe, appreciate and avoid....

The licensee must show defendant's knowledge of the dangerous pitfall, whether it be natural condition or arrangement of premises. He may of course do so circumstantially, even over defendant's denial.... While plaintiff must show the defendant had actual knowledge or 'reason to know,' of the condition, defendant will be held to appreciate its danger if a reasonable person would do so.

... If ... deterioration becomes more imminent in time and more inevitable in fact, a point will be reached when actual knowledge of the danger at one time may be inferred from knowledge of the condition of potential danger at an earlier time." *Id.* pp. 210–12.

The instructions were sufficiently adequate and clear to appropriately describe the respondents' duty of reasonable care, and what would constitute a breach of such duty, appropriate to the circumstances of this case. Therefore, the decision of the Court of Appeals is reversed. The judgment in the trial court is reinstated and affirmed.

STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the jury was instructed erroneously on the law applicable to the facts in this case which involved injuries sustained by Perry when struck by a falling limb from a dead tree on the Williamsons' property. The instructions were patterned on Palmore's *Kentucky Instructions to Juries*, 2d Ed.1989, Sec. 24.09.

The majority correctly states the applicable part of the rule set out in Section 342 of the *Restatement (Second) of Torts* which has been adopted by Kentucky. Palmore's own comment to Section 24.09 says that his instructions are intended to paraphrase the Restatement.

The problem with the instructions in Palmore, as with that given by the trial judge, is that the jury is told to find what the possessor of the land either knew or should have realized as an ordinarily prudent person in the exercise of ordinary care. *See* Palmore's Comment to Section 24.35. What a reasonable person should realize from the facts known to him has nothing to do with exercising ordinary care. A person acts or does not act exercising ordinary care. In the civil realm, the person cannot carelessly not realize something. The state of realization is itself neither careless nor not careless. Consequently the only sensible way a jury could interpret the instruction is that the possessor should have done something to realize the situation better. The possessor was under no such duty.

Perry argues that the trial judge appropriately patterned the instructions on Section 24.09 of Palmore's *Kentucky Instructions to Juries*. The Williamsons claim the appellate reversal arose not from using the Palmore treatise, but from using the portion pertaining to a landowner's duties to an invitee rather than to a licensee.

I believe that the majority of the Court of Appeals panel was correct when they stated that:

The possessor of the land has a duty either to warn a licensee of or to make reasonably safe the dangerous condition if the possessor knows or has reason to know of the condition, and if the possessor should realize that it involves an unreasonable risk of harm to a licensee, who the possessor also has reason to believe will not discover the condition or realize the risk.

Under the instructions given in this case, liability was premised upon knowledge of the deteriorated condition of the tree only, although an additional requirement is that the Williamsons should have realized that the condition of the tree involved an unreasonable risk of harm.

I would affirm the decision of the Court of Appeals.